IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT J. LARRY,                          05-CV-229-BR

       Plaintiff,                    OPINION AND ORDER

v.

PETER HELZER, SCOTT BROUGHTON,
and MICHAEL CLARY,

       Defendants.


**MARK E. GRIFFIN**
Griffin McCandlish
Waldo Block, Suite 202
215 S.W. Washington St.
Portland, OR 97204
(503) 224-2348

**WILLIAM D. BRANDT**
William D. Brandt, P.C.
1820 Commercial St.
Salem, OR 97302
(503) 485-4168

      Attorneys for Plaintiff


1 - OPINION AND ORDER

**LINDA MENG**
City Attorney
**J. SCOTT MOEDE**
Deputy City Attorney
Office of City Attorney
1221 S.W. Fourth Ave., Room 430
Portland, OR 97204
(503) 823-4047

     Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (#14) and Defendants' Motion for Partial Summary Judgment (#18).  The Court heard argument on these Motions on May 4, 2006.

     For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS in part** and **DENIES in part** Defendants' Motion for Partial Summary Judgment.


<u>**FACTUAL BACKGROUND**</u>

     The following material facts are undisputed unless otherwise noted and, if disputed, are viewed in the light most favorable to the nonmoving party.

     At approximately 11:00 p.m., March 21, 2003, a Portland 911 operator received a call from a woman who reported Plaintiff had assaulted her.  The caller gave her name, which was phonetically noted in the dispatch record as "Rolanda Terrace."  The parties

2 - OPINION AND ORDER

agree the caller's true name is "Rolanda Harris" and the spelling discrepancy was likely due to garbled communication between the caller and the 911 operator.  The 911 operator also had access to a record of the telephone number from which Ms. Harris was calling.

Ms. Harris first said she was on the porch of Plaintiff's residence located at 412 N.E. Beech Street in Portland.  Later Harris stated she was in a car parked on the street near the residence.  Harris reported Plaintiff was "drunk" and had "many guns in his house."

The 911 operator dispatched police officers to an "assault in progress at 412 N.E. Beech" and relayed that "the bad guy's at the location now and pushing and hitting the complainant."  Based on Ms. Harris's report, the 911 operator also relayed that the assailant was "Robert Larry," a "42 year-old, black male" who was "drunk."  The operator broadcast that there were "a lot of guns in the house . . . but no indication any guns are out."

Portland Police Officers Helzer and Broughton arrived at the street outside of Plaintiff's house at 11:06 p.m.  A minute later, Portland Police Officers Clary and Koenig arrived in separate cars.  The officers saw Plaintiff outside of a parked car talking to a woman sitting in the car.  Neither of them was shouting.  The parties agree the woman in the car was Ms. Harris.

The officers saw Plaintiff walk away from the car towards

3 - OPINION AND ORDER

his house.  He crossed the public roadway before he reached the
public sidewalk in front of his house.  When Plaintiff was on the
sidewalk, Officers Helzer and Clary told Plaintiff to stop and to
show his hands.  Plaintiff did not respond and instead continued
to walk towards his house.  When Plaintiff was on his front porch
and near his front door, he put his hand in his pocket, retrieved
keys, and began to unlock the door.

By the time Plaintiff was on the porch, Officers Helzer and
Clary had drawn their guns and commanded Plaintiff to raise his
hands and to turn around.  Again, Plaintiff did not comply.
Before Plaintiff could open the door to his house, Officers
Helzer and Broughton performed an "arm bar take down," grabbed
Plaintiff by the wrist, forced him to the ground face first with
his hands behind his back, and placed him in handcuffs.  Officers
Helzer and Broughton detained Plaintiff in order to investigate
the reported assault.  Plaintiff was not combative, and his only
resistance was to stiffen and to pull away as the handcuffs were
placed on him.  The officers walked him to Officer Koenig's
police car and placed him in the car pending their initial
investigation.  Again, Plaintiff did not resist.

While the officers were occupied with Plaintiff, Ms. Harris
left the area.  Officer Broughton asked the 911 operator to
telephone Ms. Harris to determine her location so that an officer
could interview her, but the operator was unable to make contact

4 - OPINION AND ORDER

with anyone at Ms. Harris's number.  In the meantime, Officer

Broughton spent 5-10 minutes attempting to interview Plaintiff in

the police car.  When the officers learned Ms. Harris was not

available to participate in the investigation, they concluded

they did not have any basis to detain Plaintiff further on

suspicion of assault or any other criminal violation.

The officers, however, did not release Plaintiff.  Instead

they decided to transfer Plaintiff to Hooper Center Sobering

Station pursuant to Or. Rev. Stat. § 430.399(1), which provides

in part:

> Any person who is intoxicated or under the
> influence of controlled substances in a
> public place may be taken or sent home or to
> a treatment facility by the police.  However,
> if the person is incapacitated, the health of
> the person appears to be in immediate danger,
> or the police have reasonable cause to
> believe the person is dangerous to self or to
> any other person, the person shall be taken
> by the police to an appropriate treatment
> facility. . . .

Although the officers contend Plaintiff was intoxicated in a

public place and was a danger to himself or others, they concede

there are fact questions as to these issues.

Officer Koenig drove Plaintiff to Hooper Center at

11:34 p.m., and Plaintiff was admitted at 11:56 p.m.  The

admitting records reflect Plaintiff had an unsteady gait (mild

body sway while standing still), mild slurred speech, diminished

concentration, and ataxia.  Plaintiff also was agitated.  He

5 - OPINION AND ORDER

demanded but was refused a breath test.

Hooper Center staff released Plaintiff at 2:15 a.m.  By that time, he was alert, focused, and had clear speech and a steady gait.

## CLAIMS AND DEFENSES

In his First Amended Complaint, Plaintiff brings three claims:

Plaintiff's First Claim consists of three counts brought pursuant to 42 U.S.C. § 1983 in which Plaintiff alleges Defendants, while acting under color of state law, violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.  In Count 1, Plaintiff alleges Defendants used excessive force against him.  At oral argument, Plaintiff's counsel clarified Count 1 covers all physical contact that the officers had with Plaintiff from the time he was on his porch until he was lodged at the Hooper Center.  In Count 2, Plaintiff alleges Defendants "falsely" arrested and detained him. At oral argument, Plaintiff's counsel clarified Count 2 covers all aspects of Plaintiff's detention except that Plaintiff concedes the officers had authority to stop him in a reasonable manner and for a reasonable time to conduct a brief investigation of the reported assault.  In Count 3, Plaintiff alleges Defendants violated Plaintiff's rights under the Equal Protection

Clause when Defendants engaged in a pattern and practice of racially motivated discriminatory conduct that resulted in Plaintiff's detention.

Plaintiff brings his Second and Third Claims under state law.  The Second Claim is for assault and battery, and the Third Claim is for intentional infliction of emotional distress.

Defendants deny Plaintiff's claims and assert numerous affirmative defenses that include justification, privilege, good-faith immunity, and qualified immunity.


**STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences

7 - OPINION AND ORDER

in favor of the nonmoving party. *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw*., 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In his Motion, Plaintiff asserts he is entitled to summary judgment on the basis "that the conduct of defendants constitutes a false arrest and detention of plaintiff."  In his supporting memorandum, Plaintiff asserts his Motion was intended to answer only the following question:  "[M]ay police officers remove an intoxicated person from his residence, take him to a public place in handcuffs, and then detain him on a civil detox hold?"  At oral argument, however, Plaintiff's counsel conceded Defendant

8 - OPINION AND ORDER

officers had reasonable suspicion to conduct an investigatory stop of Plaintiff pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), as long as they conducted the detention in a reasonable manner and for a reasonable time.

Thus, the Court denies Plaintiff's Motion to the extent Plaintiff challenges the officers' authority to conduct a *Terry v. Ohio* investigatory stop in the first instance. In addition, the Court denies Plaintiff's Motion as to whether the officers conducted the investigatory stop in a reasonable manner and for a reasonable time in light of the fact the parties agree there are issues of fact that preclude summary judgment.

In Count 2 of his § 1983 claim, Plaintiff also challenges the officers' authority to detain him on a civil "detox" hold pursuant to Or. Rev. Stat. § 430.399(1). In particular, Plaintiff argues the officers violated his Fourth Amendment rights when they "arrested" him without probable cause to believe he had committed a crime. As explained in the Court's discussion of Defendants' Motion for Partial Summary Judgment, however, there are issues of fact that preclude summary judgment for any party as to the lawfulness of Plaintiff's detention on a civil hold.

Accordingly, the Court denies Plaintiff's Motion for Partial Summary Judgment in its entirety.

9 - OPINION AND ORDER

## DEFENDANTS' CROSS-MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Defendants assert they are entitled to partial summary judgment that (1) the officers' initial investigatory stop and subsequent investigation while Plaintiff was in the back of the police car was lawful, (2) their use of force was reasonable, and (3) the decision to transfer Plaintiff to Hooper Center was reasonable and not racially motivated. In addition, Defendants assert they are entitled to qualified immunity as to their decision to place Plaintiff at the Hooper Center. Finally, Defendants contend the Court should dismiss Plaintiff's state-law claims for assault and battery and intentional infliction of emotional distress.

I.  **Plaintiff's § 1983 Claims for False Arrest.**

    A.  **Initial Investigatory Stop of Plaintiff.**

A police officer may conduct a brief stop of a person for investigatory purposes when the officer has "reasonable suspicion" to believe the stopped individual is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. at 23-27. *See also Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1996). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *U.S. v. Dorais*, 241 F.3d 1124,

1130 (9th Cir. 2001)(quoting *U.S. v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)).  It requires only "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

As noted, the parties agree the officers had reasonable suspicion to conduct an investigatory stop of  Plaintiff to investigate the 911 complaint that he had assaulted Ms. Harris. Accordingly, to the extent Defendants seek a conclusive determination that they were justified under the Fourth Amendment to initiate an investigatory stop of Plaintiff on his front porch, the Court grants Defendants' Motion.

Nonetheless, the parties also agree there are issues of fact precluding summary judgment as to whether the officers conducted the investigatory stop in a reasonable manner and for a reasonable time.  The Court, therefore, denies Defendants' Motion as to these issues.

In summary, the Court concludes Defendants are entitled to partial summary judgment that their original detention of Plaintiff to investigate his role in a potential assault did not constitute an unreasonable seizure under the Fourth Amendment, which leaves to the jury the issue as to whether the nature and duration of that detention was unreasonable under all of the circumstances.

11 – OPINION AND ORDER

B.    **Transfer of Plaintiff to Hooper Center**.

    1.    **Fourth Amendment Probable-Cause Standard Applies**.

As noted, under Count 2 of Plaintiff's § 1983 claim, Plaintiff challenges the officers' authority to detain him on a civil "detox" hold pursuant to Or. Rev. Stat. § 430.399(1). Although his constitutional arguments are not fully developed in the pleadings, it is clear that Plaintiff contends Defendants "seized" him unreasonably in violation of the Fourth Amendment when they kept him in custody after they concluded their initial investigation of the assault call and when they took him from his neighborhood and placed him at the Hooper Center against his will.

In their Motion, Defendants seek a conclusive determination that they did not violate Plaintiff's rights under the Fourth Amendment by placing him at the Hooper Center because they did so pursuant to their authority under Or. Rev. Stat. § 430.399(1). In the alternative, Defendants seek summary judgment on the basis of qualified immunity because they assert it was not clearly established in 2003 that acting in compliance with § 430.399(1) violated the Fourth Amendment.

During oral argument, the Court inquired and the parties agreed this aspect of Defendants' Motion as to Count 2 of Plaintiff's § 1983 claim must be resolved under Fourth Amendment standards. Nonetheless, the parties disagreed about the Fourth

12 - OPINION AND ORDER

Amendment standard to apply (*i.e.,* probable cause, reasonable
suspicion, or a different standard) when analyzing the officers'
decision to take Plaintiff to the Hooper Center.  Moreover, there
does not appear to be a controlling Ninth Circuit decision on the
issue.

The Court notes the Ninth Circuit considered Or. Rev.
Stat. § 430.399(1) in the context of a § 1983 claim against
Portland police officers and the Hooper Center itself in
*Halvorsen v. Baird*, 146 F.3d 680 (9th Cir. 1998).  Although the
*Halvorsen* court applied a Fourth Amendment analysis to the *Terry*
stop of an intoxicated person and considered whether such stop
became so intrusive as to constitute a full arrest that required
probable cause, the court's Fourth Amendment analysis focused on
police conduct before detention of the plaintiff in a detox
facility and did not discuss the constitutional justification a
police officer must have in order to impose a civil detention on
an intoxicated person in the first instance.  With respect to the
civil detention, the court's primary focus was whether the
detained person had a due-process right not to be held
*incommunicado* in a detox facility.  In holding there was such a
due-process right, the court noted it was not a due-process
violation to confine a person intoxicated in a public place
"overnight until sober enough to be safe."  *Id.* at 687.  That
conclusion, however, does not address directly the applicability

13 - OPINION AND ORDER

of a Fourth Amendment analysis to the decision to detain the

intoxicated person, and, therefore, *Halvorsen* does not provide

any useful guidance for the proper constitutional analysis in

this case.  In any event, the Court notes the Supreme Court has

criticized the use of a due-process analysis when a specific

constitutional right is implicated:

> Where a particular amendment "provides an explicit
> textual source of constitutional protection" against a
> particular sort of government behavior, "that
> Amendment, not the more generalized notion of
> substantive due process,' must be the guide for
> analyzing" such a claim.

*Albright v. Oliver*, 510 U.S. 266, 273 (1994)(plurality

opinion)(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Because the parties agree Defendants' decision to detain

Plaintiff on a civil hold effected a "seizure" of Plaintiff and

that Plaintiff must show this seizure was unreasonable under the

Fourth Amendment, the Court must determine the test of

reasonableness that applies in this context.

In *Morgan v. Woessner*, the Ninth Circuit noted "stops"

of individuals fall into three categories under the Fourth

Amendment:

> First, police may stop a citizen for questioning
> at any time, so long as that citizen recognizes
> that he or she is free to leave.  Such brief,
> "consensual" exchanges need not be supported by
> any suspicion that the citizen is engaged in
> wrongdoing, and such stops are not considered
> seizures.  Second, the police may "seize" citizens
> for brief, investigatory stops.  This class of

> stops is not consensual, and such stops must be
> supported by "reasonable suspicion."  Finally,
> police stops may be full-scale arrests.  These
> stops, of course, are seizures, and must be
> supported by probable cause.

997 F.2d 1244, 1252 (9th Cir. 1993)(citations omitted).

It is well-settled that the "reasonableness" of a warrantless

"arrest" depends on the existence of probable cause.  *Id*. at 772.

*See also Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir.

1996).  In Oregon, however, it is not a crime merely to be

intoxicated in a public place.  *See State v. Premsingh*, 154 Or.

App. 682, 688 (1998).  Thus, the question is whether some

formulation of the probable-cause standard applies to a civil

hold for public intoxication.

In *Anaya v. Crossroads Managed Care Systems, Inc*., the

Tenth Circuit held a police officer "must have probable cause to

believe an intoxicated person is a danger to himself or others"

to justify the person's seizure on a civil "detox" hold.  195

F.3d 584, 590 (10th Cir. 1999).  In reaching that conclusion, the

court relied on its holding in a case involving seizures of

mentally ill persons:

> Because a seizure of a person for an emergency mental
> health evaluation raises concerns that are closely
> analogous to those implicated by a criminal arrest, and
> both are equally intrusive, we conclude that the
> "probable cause" standard applies . . . .

*Id*. (citing *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir. 1996)).

The Court found a seizure of persons for detoxification also was

15 - OPINION AND ORDER

analogous to a criminal arrest and, thus, the probable cause standard was applicable.  To determine the scope of probable cause required, the court considered the rationale underlying state authority to seize a person in the civil context.  The court acknowledged the state may exercise police power to maintain the health, safety, and welfare of the public and held:

> As the state has an interest protecting the public from the mentally ill and the mentally ill from themselves, so the state also has an interest in protecting the public from the intoxicated and the intoxicated from themselves. . . .  Accordingly, to justify seizure for intoxication by alcohol, an officer must have probable cause to believe an intoxicated person is a danger to himself or others.

*Id.* at 590-91 (internal citations omitted).

This Court finds the reasoning of *Anaya* compelling and persuasive and, in the absence of any contrary direction from the Ninth Circuit, applies the holding in *Anaya* to evaluate Defendants' decision to detain Plaintiff on a civil "detox" hold.

**2.  Fact Issues regarding Intoxication and Danger to Self or to Others Preclude Summary Judgment.**

As noted, Defendants seek partial summary judgment on the basis that their transfer of Plaintiff to the Hooper Center was reasonable as a matter of law.  At oral argument, however, Defendants' counsel conceded there are fact issues concerning whether Plaintiff was intoxicated and, if so, whether he was a danger to himself or to others.  Accordingly, the Court denies this aspect of Defendants' Motion.

16 - OPINION AND ORDER

**3.    Question of Law Precludes Summary Judgment as to Whether Plaintiff Was in a "Public Place" When He Was Detained under Or. Rev. Stat. § 430.399(1).**

It is undisputed that Plaintiff was on a public street before he was detained on his porch.  Under Oregon law, however, Plaintiff's porch is not a "public place" for purposes of Or. Rev. Stat. § 430.399(1).  *See State v. Premsingh*, 154 Or. App. at 688.  Thus, the officers were not authorized to seize Plaintiff under § 430.399(1) for being intoxicated on his porch.

Plaintiff was in the back of a police car, which the parties also agree is not a public place, when the officers decided to transfer him to the Hooper Center.  The parties, however, did not analyze whether § 430.399(1) would authorize a civil hold on an individual who had been on a public street, who was lawfully detained for a *Terry* investigative stop while on his front porch and placed in a police car, and who was about to be "released" from the stop at the conclusion of the investigation. In other words, even if plaintiff was intoxicated and a danger to himself or to others, Defendants did not develop their arguments sufficiently to permit resolution of the legal question as to whether Plaintiff was in a public place for purposes of the officers' decision to detain him pursuant to § 430.399(1).

Accordingly, the Court denies this aspect of Defendants' Motion.

**4.    Fact Issues Preclude Summary Judgment as to Qualified Immunity.**

Even if their detention of Plaintiff on a civil "detox" hold violated Plaintiff's Fourth Amendment rights, Defendants argue they are entitled to summary judgment on the basis of qualified immunity because (1) they followed Oregon law and Portland Police Bureau policy when they took Plaintiff to the Hooper Center and (2) it was not clearly established in 2003 that it was unreasonable under the Fourth Amendment to detain a person as permitted by Oregon law.

When "deciding whether Defendants are entitled as a matter of law to qualified immunity, [the court] must accept the facts in the light most favorable to the Plaintiffs and then determine whether, in light of clearly established principles governing the conduct in question, the officers objectively could have believed that their conduct was lawful." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1036 (9th Cir. 2000).  "This standard requires a two-part analysis:  1) Was the law governing the official's conduct clearly established?  2) Under that law, could a reasonable officer have believed the conduct was lawful?"  *Id.*

As noted, there are fact issues concerning whether Plaintiff was intoxicated and, if intoxicated, whether Plaintiff was a danger to himself or to others.  Viewing the record in the light most favorable to Plaintiff, the Court must assume

18 - OPINION AND ORDER

Plaintiff was not intoxicated and not a danger to himself or to others for purposes of Defendants' Motion.  Thus, the existing record is not sufficient for the Court to reach Defendants' qualified immunity defense.

Accordingly, the Court denies this aspect of Defendants' Motion.

## II.  **Plaintiff's § 1983 Claim for Excessive Force**.

Defendants also seek partial summary judgment on Count 1 of Plaintiff's § 1983 claim for excessive force (except for the issue as to whether the officers handcuffed Plaintiff too tightly and threw him to the ground with excessive force).  At oral argument, however, Defendants' counsel conceded there were fact issues precluding summary judgment as to the degree of force the officers used throughout their contact with Plaintiff.

Thus, the Court denies Defendants' Motion as to this issue.

## III. **Plaintiff's § 1983 Claim Regarding Transfer to Hooper Center as Racially Motivated**.

Pointing to a lack of evidence, Defendants also seek summary judgment as to Plaintiff's claim that the officers' decision to transfer Plaintiff to Hooper Center was racially motivated in violation of his constitutional right to equal protection.  To support this claim, Plaintiff relies solely on his deposition testimony in which he related conversations that he had with Hooper Center personnel, who allegedly told him the police bring

19 - OPINION AND ORDER

African-Americans to Hooper Center because "they didn't have anything to arrest the person for."  All of Plaintiff's evidence on this subject, however, is inadmissible hearsay.  *See* Fed. R. Evid. 801, 802.

Thus, on this record, the Court finds Plaintiff has failed to establish a genuine issue of material fact exists as to whether Defendants violated Plaintiff's equal-protection rights by transferring him to Hooper Center as part of a racially motivated pattern and practice of discrimination against African-Americans.

Accordingly, the Court grants Defendants' Motion as to Plaintiff's equal-protection claim.

**IV.   State Law Claims:  Assault and Battery, Intentional Infliction of Emotional Distress.**

As noted, the Court denied Defendants' Motion for Partial Summary Judgment as to these state-law claims during oral argument because genuine issues of material fact exist as to these claims, which precludes summary judgment.

**CONCLUSION**

For these reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment (#14) and **GRANTS in part** and **DENIES in part** Defendants' Motion for Partial Summary Judgment (#18).

## CASE MANAGEMENT

As the Court noted during oral argument, Or. Rev. Stat. § 30.265(1) requires any tort action arising from a public employee's conduct in the course and scope of employment to be "an action against the public body only."  Thus, Plaintiff's Second and Third Claims may be brought only against the City of Portland, which is not a named defendant in this matter.

Accordingly, the Court directs Plaintiff to file an amended complaint no later than May 31, 2006, to address this issue.  The Court understands Defendants' counsel will accept service on behalf of the City of Portland.  Defendants shall answer Plaintiff's amended complaint no later than June 12, 2006.

The Court also directs the parties to confer and to submit no later than June 15, 2006, a joint status report that includes a proposed case management schedule for further proceedings, including potential trial dates.

IT IS SO ORDERED.

DATED this 17th day of May, 2006.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


21 - OPINION AND ORDER